Argued December 23, 1976, reversed March 21, petition for review denied
April 27, 1977

# MONTGOMERY WARD AND COMPANY, INC.,
*Petitioner,*
*v.*
# BUREAU OF LABOR, *Respondent.*
## (CA 6773)
561 P2d 637

Gregory W. Byrne, Portland, argued the cause for petitioner. With him on the brief was Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

W. Michael Gillette, Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

SCHWAB, C. J.

Thornton, J., specially concurring opinion.

## SCHWAB, C. J.

Petitioner appeals from a decision of the Commissioner of the Bureau of Labor ruling that petitioner had unlawfully discriminated against the complainant, James Williams. This appeal involves construction of an Act of the 1973 legislature (Oregon Laws 1973, ch 660, p 1459) prohibiting discrimination against handicapped workers. ORS 659.400 et seq.

ORS 659.425(1) provides:

"It is an unlawful employment practice for any employer to refuse to hire * * * an individual [who] has a physical or mental handicap, unless it can be shown that the particular handicap prevents the performance of the work involved."

"Handicap" is defined as

"* * * a physical or mental disability including but not limited to sensory disabilities and resulting in a handicap unrelated to a person's ability to perform the duties of a particular job or position for which he would otherwise be eligible and qualified * * *." ORS 659.400(2).

The question is whether the complainant's handicap is unrelated to his ability to perform the job in question.

In 1968 complainant suffered a subendocardial infarction (heart attack) while working as a roofer. He was hospitalized for about two weeks and then spent about three and one-half months recuperating. He tried to return to his roofing job, but because he experienced chest pains his doctor advised him to seek other employment. Over the following years, complainant worked briefly as an appliance salesman and managed a service station for about four years. He was continuously under the care of a cardiologist, Dr. Dygert, and was taking medication regularly.

In March or April 1974, complainant applied to petitioner for employment. He provided a letter from Dr. Dygert which summarized his medical history and physical condition. After a series of interviews, com-

plainant was offered a position as a heavy appliance (refrigerators, washers, etc.) salesman, subject to a physical examination by petitioner's company physician, Dr. Battalia.

Dr. Battalia has been employed by petitioner since 1955. His experience includes diagnosis of heart conditions. One of his duties is to be familiar with the work performed by petitioner's employes in order to make any necessary health and safety recommendations. Dr. Battalia testified that he was quite familiar with the job of a heavy appliance salesman; that he had attended two such salesmen when they had cardiac incidents at one of petitioner's stores; and that "Both cases [were] in a time of stress, straining."

Based upon his examination of complainant, Dr. Battalia concluded complainant's blood pressure was considerably above normal, that he had a "split first [heart] sound," and that his right pedal pulses were reduced, indicating peripheral arterial disease. Complainant's medical history since his 1968 infarction included frequent attacks of angina. Dr. Battalia's findings led him to conclude that complainant would be unable to perform the work of a heavy appliance salesman without serious risk of another heart attack. Dr. Battalia rejected complainant only from employment as a heavy appliance salesman, not from other employment with petitioner.

Complainant then initiated this proceeding before the Bureau of Labor charging petitioner with unlawful discrimination within the meaning of ORS 659.425(1). At the hearing on this charge, complainant's physician, Dr. Dygert, opined that complainant only faced a significant risk of another heart attack if he engaged in sustained strenuous labor, but was qualified to perform the job of heavy appliance salesman if it involved only occasional exertion. Dr. Dygert acknowledged that complainant frequently reported attacks of angina; he also noted hypothyroidism, which he conceded would produce an increase in the risk of heart attack.

[ 750 ]

Much evidence was presented at the hearing concerning the nature of a heavy appliance salesman's duties. There was testimony that such salesmen must unpack and place heavy merchandise in displays, move and rearrange appliances weighing as much as 400 pounds, and carry or help carry such things as electronic ovens and air conditioners to customers' vehicles. The Commissioner's decision contains the following findings:

> "* * * [T]he duties of appliance salespersons consist primarily of speaking with the public about possible purchases. Any moving of appliances would normally be handled by warehousepersons with sporadic shifting of appliances by salespersons * * *."

Although not responsive to the evidence presented, we interpret this to mean that the Commissioner found that the job would or might involve physical exertion.

Under ORS 659.400(2) the question becomes whether complainant's heart condition was unrelated to his ability to perform the duties of a heavy appliance salesman.

■ The Commissioner interpreted the statute to require there be "a high probability of incapacitation" before petitioner could decline to hire complainant. We believe the Commissioner's interpretation of the statute to be unwarranted. Assuming arguendo that a preexisting heart condition constitutes a physical handicap under ORS 659.400(2), we interpret the Act as providing that an employer may refuse to hire an applicant with such a "handicap" where there is a reasonable medical possibility that the applicant might, because of the extent of disability and the nature of the work, be unable to perform the work or could experience injury as a result of attempting to perform it. This is particularly true in the murky area of heart conditions—an area in which the workmen's compensation cases which have come before us indicate that experienced physicians almost always disagree.

■ Even as so interpreted, we are still confronted with the conflicting opinions of Drs. Battalia and Dygert. Each doctor conceded that the other's opinion was not untenable. The Commissioner perceived his role to be to decide which opinion was more persuasive. We find nothing in the Act which requires the Commissioner to make that difficult decision. We conclude that the proper rule, at least in heart-condition situations, is that where an employer requires a job applicant to undergo a medical examination by a licensed physician, and the physician renders a reasonable and good-faith opinion that the applicant's condition is not compatible with the projected employment, the employer should not be held in violation of the Act for rejecting the applicant in reasonable and good-faith reliance on the advice of the physician.

■ We hold that as a matter of law Dr. Battalia's diagnosis that complainant's heart condition was incompatible with the work of a heavy appliance salesman was reasonable and rendered in good faith. We further hold that as a matter of law petitioner's reliance on Dr. Battalia's opinion in not hiring complainant as a heavy appliance salesman was reasonable and in good faith.

Reversed.

**THORNTON, J.,** specially concurring.

I concur in the result reached by the majority but disagree with the approach.

As I read the applicable statutes, the result reached by the Labor Commissioner must be sustained unless "unlawful in substance or procedure," or not based on "substantial evidence in the whole record." ORS 183.482(8) (a) and (d). In this case, although the point is difficult because the findings are framed in the negative, I would hold that several key findings are not supported by substantial evidence.

The majority interprets ORS 659.400(2) as provid-

ing that "an employer may refuse to hire an applicant with such a 'handicap' where there is a reasonable medical possibility that the applicant might * * * be unable to perform the work or could experience injury as a result of attempting to perform it" and that "where an employer requires a job applicant to undergo a medical examination by a licensed physician, and the physician renders a reasonable and good-faith opinion that the applicant's condition is not compatible with the projected employment, the employer should not be held in violation of the Act * * *."

The Act delegates enforcement and adjudicatory functions to the Commissioner of the Bureau of Labor. ORS 659.435. It follows that the Commissioner determines whether and in what way "it can be shown that the particular handicap prevents the performance of the work involved," ORS 659.425(1), and whether or not the handicap is "unrelated to a person's ability to perform the duties of a particular job," ORS 659.400(2).

The Labor Commissioner viewed the determinative issue in this case to be

"* * * whether complainant's physical condition at the time of application presented only a possible risk of reinjury, and did thus afford a reasonable expectation of continuous availability; or whether it presented a high probability of incapacitation while performing the ordinary tasks comprising the job in question, and could thus be deemed to prevent its performance."

In framing the issue in this manner, the Commissioner has issued an interpretative rule in an adjudicative context, 1 K. Davis, Administrative Law 298 to 324, §§ 5.03 to 5.06 (1958).[1] While the rule is entitled to weight in construing the statute, I agree that it is wrong.

---

[1] *See also,* ORS 183.355(5); *Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977); *Springfield Ed. Assn v. Sch. Dist.,* 24 Or App 75, 547 P2d 647, *modified* 25 Or App 407, 549 P2d 1141, Sup Ct *review denied* (1976).

It seems to me that the determinative issue is simpler: Is the disability unrelated to the person's ability to perform the duties of the particular job? ORS 659.400(2). While I recognize that this inquiry is made more difficult when the particular disability is a heart disorder which poses the risk of a sudden incapacity and not a continuing, definable limitation, I do not think this need change the inquiry to "reasonable medical possibility," "high probability of incapacitation" or "substantial risk." In this case it was demonstrated that the disability was related to the claimant's ability to perform the duties of the particular job and the following findings were not supported by substantial evidence: That complainant suffered no recurrence of heart trouble subsequent to his heart attack in 1968; that the work of a heavy appliance salesman is not strenuous; that the employer's physician did not have a thorough knowledge of the requirements of the job of appliance salesman; and that employer's physician did not have adequate data to accurately define applicant's physical limitations.

It follows that the claimant was not physically handicapped within the meaning of ORS 659.400(2).

Lastly, it seems to me that we cannot "hold as a matter of law Dr. Battalia's diagnosis that complainant's heart condition was incompatible with the work of a heavy appliance salesman was reasonable" without reference to the Commissioner's findings. Unless this court finds that the Commissioner's findings are not supported by substantial evidence, those findings are conclusive and binding on this court and stand approved. ORS 183.482(8)(d). Our decision cannot operate in a factual vacuum. It must of necessity be based on specific facts. Therefore it is my position that we must specifically point out in our decision that the Commissioner's key and dispositive findings of fact are not supported by substantial evidence. If, as the Commissioner found, Dr. Battalia "did not have a thorough knowledge of the requirements of the job for which complainant applied" and "did not have ade-

quate data to accurately define complainant's physical limitations" and the complainant "suffered no recurrence of heart trouble subsequent to his attack in 1968" and the work "did not constitute strenuous physical exertion," then how is it possible to conclude as a matter of law that Dr. Battalia's "diagnosis" was reasonable?